*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 30, 2020

BY CM/ECF

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: United States v. Omar Amanat and Irfan Amanat
      S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

  The Government respectfully writes in reply to the supplemental letters filed by defendants Omar Amanat ("Omar") and Irfan Amanat ("Irfan") in further support of their post-conviction and pre-sentencing bail applications in light of COVID-19. (Dkt. 1065-68, 1070-72). For the reasons set forth below and in the Government's March 18, 2020 opposition (Dkt. 1064), the Court should deny Omar's and Irfan's motions.

  A. <u>The Defendants Have Failed to Rebut the Statutory Presumption That They Be Detained Pending Sentencing</u>

  Where, as here, a defendant's request for release was made after his conviction but prior to sentencing, 18 U.S.C. § 3143 applies. The part of Section 3143 relevant to defendants' motions provides:

> (a) *Release or detention pending sentence.* — (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. § 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

"Post-conviction, a defendant no longer has a substantive constitutional right to bail pending sentencing," because "the defendant is no longer entitled to the presumption of innocence." *United States* v. *Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) (affirming denial of bail) (internal quotations omitted); *accord United States* v. *Scali*, 738 F. App'x 32, 33 (2d Cir. 2018) (same). "In general, following a [conviction], there is 'a presumption in favor of detention.'" *United States* v. *Nouri*, 2009 WL 2924334, at *2 (S.D.N.Y. Sept. 8, 2009) (quoting *United States* v. *Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004)). "Unless the applicable Guidelines would not call for a term of imprisonment, the court "shall order that a person who has been found guilty of an offense and who is awaiting imposition . . . of sentence . . . be detained." *Nouri*, 2009 WL 2924334, at *2 (quoting 18 U.S.C. § 3143(a)(1)). "Accordingly, § 3143(a) places the burden on a defendant to demonstrate by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of others or the community." *Madoff*, 316 F. App'x at 59.

In its March 18, 2020 opposition to the defendants' motions (Dkt. 1064), the Government showed that the defendants had failed to rebut the statutory presumption that they each be detained pending sentencing because they each have failed to show by "clear and convincing evidence" that each "is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). The Court has already found that both defendants are flight risks. (Omar Trial Tr. 7328; Irfan Trial Tr. 946-952). Both defendants are also plainly dangers to the community in light of their obstructive efforts to present falsified evidence to the Court to falsely show that certain cooperating witnesses had been paid to testify against them. (Dec. 11, 2019 Gov't Ltr. (Dkt. 1049)). *See Scali*, 738 F. App'x at 33 ("The court reasonably determined that Scali's Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee. . . . Additionally, the court reasonably found that Scali's perjury conviction makes it difficult to trust his promise that he will not flee. These factors are more than sufficient to sustain the district court's judgment.") (internal citations omitted); *United States* v. *Rollins*, 2020 WL 1482323, at *2 (N.D.N.Y. Mar. 27, 2020) ("As serious as it is, the outbreak of COVID-19 simply does not override the statutory detention provisions [of 18 U.S.C. § 3143(a)]. In the absence of evidence demonstrating a change in circumstances concerning Rollins's status as a flight risk and danger to another person or the community, detention pending sentence must be maintained").

With their most recent letters, the defendants still do not meet their burdens under Section 3143(a)(1). Omar contends that he is no longer a flight risk because of the difficulties of international travel and because of his claimed lack of resources (which contradicts his claim that he has earned hundreds of millions of dollars from his various ventures). (Dkt. 1066; Trial Tr. 167 (Amanat Opening: "He founded a company called Tradescape, and he made a tremendous amount of money as a very young man."); *id.* at 565 (Maiden: "[Omar] told me that in his 20s, early 20s he had founded a trading company, Tradescape and sold it to E*Trade for a hundred million dollars, so had a . . . big success there, made a lot of money.")). Many defendants could make these same general arguments. Were such arguments sufficient for a defendant to meet his burden, then the flight-risk prong of the analysis would be effectively eliminated. Notably, Omar does not address his obstructive conduct that makes plain he is a danger to the community. Irfan addresses neither prong of the analysis. Because they have failed to meet their burdens of rebutting the presumption that they be detained, Section 3143(a)(1) requires that they continued to be detained pending sentencing.

B.      COVID-19 Does Not Justify the Defendants' Release

Omar and Irfan make various arguments about the capabilities of MDC to handle COVID-19, none of which support their release.

1.      MDC is Capable of Protecting the Health and Safety of Inmates

Omar and Irfan generally argue that "MDC is not adequately prepared for the Coronavirus/COVID-19" (Dkt. 1066, at 3), and note that one inmate has now tested positive for COVID-19 at MDC (Dkt 1068, at 1-2). The Government demonstrated in its initial opposition that BOP has been preparing for a pandemic flu generally since at least 2012, and for COVID-19 specifically since January 2020. (Dkt. 1064, at 2-3). Again, were Omar's and Irfan's arguments sufficient to meet their burdens, then all inmates in BOP custody would have to be released. That cannot be the case, and similar arguments are being routinely rejected by courts in this District and around the country. *See, e.g., United States* v. *Acosta*, 19 Cr. 848 (NRB) (S.D.N.Y. Mar. 25, 2020) (Dkt. 14) (denying pre-sentencing bail application by inmate detained in MCC, where defendant's motion "[r]el[ied] mainly on a form letter proffering general reasons to release inmates because of the spread of the COVID-19 virus"); *United States* v. *Alvarez*, 19 Cr. 622 (DLC) (S.D.N.Y. Mar. 24, 2020) (Dkt. 17) (denying pretrial bail application for inmate detained in MCC on controlled substances charges who had been diagnosed with Hepatitis B); *United States* v. *Bradley*, 19 Cr. 632 (GBD) (S.D.N.Y. Mar. 25, 2020) (Dkt. 25) (denying pretrial bail application by inmate detained in MCC, where defendant was charged with controlled substances and firearm charges, and had recently experienced a stroke and had high blood pressure); *United States* v. *Rivera*, 20 Cr. 6 (JSR) (S.D.N.Y. Mar. 25, 2020) (minute entry) (denying pretrial bail application by inmate detained in MCC, where defendant was charged with controlled substance charge and had a childhood history of asthma); *United States* v. *White*, 19 Cr. 536 (PKC) (S.D.N.Y. Mar. 25, 2020) (minute entry) (denying pretrial bail application by inmate detained at Valhalla, where defendant was charged with controlled substance and Hobbs Act charges, and had history of whooping cough); *cf. United States* v. *Bonafe*, 2020 WL 1467146, at *1 (S.D.N.Y. Mar. 26, 2020) ("The Court further finds that the impact of COVID-19 on Mr. Bonafe's ability to review discovery materials in the law library does not compel his release."); *United States* v. *Cohen*, 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020) ("That Cohen would seek to single himself out for release to home confinement appears to be just another effort to inject himself into the news cycle.").

Courts in other districts have similarly rejected such claims. *See, e.g., United States* v. *Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (denying pretrial release from MDC: "the Bureau of Prisons is taking system-wide precautions to mitigate the possibility of [COVID-19] infection within its facilities"); *United States* v. *Jackson*, 2020 WL 1445958, at *2 (E.D. Pa. Mar. 24, 2020) (denying pre-sentencing release: "Certainly, if I were to entertain this request [for release because of COVID-19], many other defendants would flood the courts with similar requests. I also must keep in mind the substantial burden that releasing Defendant and similarly-situated defendants would place on the U.S. Probation Office at a time when conditions already are not conducive to such monitoring."); *United States* v. *Williams*, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (denying bail after VOSR-violation: "The existence of the present [COVID-19] pandemic, without more, is not tantamount to a 'get out of jail free' card."); *United States* v. *Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) (denying pretrial release: "The

court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation."); *United States* v. *Legard*, 2020 WL 1434120, at *2 (D. Md. Mar. 24, 2020) (denying pretrial release: "Even if that situation changes [and an inmate tests positive for COVD-19 at CDF], the measures taken at CDF are in compliance with state and federal guidelines regarding protective measures to ensure the health and safety of persons such as Defendant."); *United States* v. *Banks*, 2020 WL 1450549, at *1 (D. Neb. Mar. 25, 2020) (denying pretrial release: "I am not convinced the COVID-19 pandemic is a 'material change of circumstances' warranting a renewed evaluation of my prior detention order."); *United States* v. *Jefferson*, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020) (denying pretrial release: "precautionary measures have been implemented at CTF in light of the COVID-19 pandemic"); *United States* v. *Gileno*, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020 (denying motion under 18 U.S.C. § 3582: "With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").[1]

## 2. Omar's Health Conditions Do Not Warrant His Release

Omar asserts that the fact the he suffers from "serious cardiovascular disease and diabetes" supports his release.[2] (Dkt. 1066, at 6-7; Dkt. 1067). While it is true that Omar has certain health issues that make him a higher-risk inmate, the Government submits that the Court cannot find, based on Omar's health conditions, that he is not a risk of flight or a danger to the community. *See* 18 U.S.C. § 3143(a)(1). Unfortunately, there are many inmates in BOP custody who have health problems. Omar's health conditions (which BOP has managed for the past two-plus years) are not sufficiently serious to merit his pre-sentencing release, as other courts have found. *See, e.g.*, *Alvarez*, 19 Cr. 622 (DLC) (Dkt. 17) (Hepatitis B); *Bradley*, 19 Cr. 632 (GBD) (Dkt. 25) (stroke and high blood pressure); *Rivera*, 20 Cr. 6 (JSR) (Mar. 25, 2020 minute entry) (childhood history of asthma); *White*, 19 Cr. 536 (PKC) (Mar. 25, 2020 minute entry) (whooping

---

[1] Irfan complains about the movement of inmates within MDC, despite BOP's suspension of inmate movement. (Dkt. 1068, at 2). BOP has explained the following on its website: "As we previously described generally, inmate internal movement is suspended with limited exceptions. This suspension, however, does not mean the BOP has ceased all inmate movements because the federal judicial system as well as state courts continue to process criminal cases. These movement exceptions may include, but are not limited to, transfers related to forensic studies, writs, Interstate Agreements on Detainers (IAD), medical or mental health reasons (including local medical trips), and RRC placements. To be clear, the BOP may need to move inmates to better manage the detention bedspace as well as assure that administrative facilities do not become overcrowded beyond available resources." *BOP Implementing Modified Operations*, available at https://www.bop.gov/coronavirus/covid19_status.jsp (original emphasis omitted). Accordingly, the mere fact that inmates are being moved does not mean that the BOP is inappropriately handling COVID-19.

[2] Notably, Irfan does not even attempt to argue that his personal health is a reason for his release, nor can he.

cough); *Hamilton*, 2020 WL 1323036, at *2 ("Mr. Hamilton does appear to fall within a higher-risk cohort should he contract COVID-19; however, he does not suffer from any pre-existing respiratory issues and his medical conditions appear to have been well managed over the course of the past fourteen months of incarceration."); *United States* v. *Martin*, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) ("while the record confirms that Martin has disclosed that he suffers from asthma, high blood pressure, and diabetes, this alone is insufficient to rebut the proffer by the Government that the correctional and medical staff at CDC are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus"); *Clark*, 2020 WL 1446895, at *1 (diabetes); *Legard*, 2020 WL 1434120, at *2 (asthma); *Jefferson*, 2020 WL 1332011, at *1 (asthma).

The Government acknowledges that certain judges in this District have granted bail to defendants, but each of those cases is distinguishable. In *United States* v. *Raymond Rodriguez Estrada*, 18 Cr. 18 (ALC) (Dkt. 166), Judge Carter granted the defendant's unopposed motion to withdraw his guilty plea, where he alleged that his counsel was constitutionally ineffective. The defendant had been bailed before his guilty plea, and Judge Carter reinstated the defendant's bail conditions.

In *United States* v. *Stephens*, 2020 WL 129515515 (S.D.N.Y. Mar. 19, 2020 — a violation of supervised release proceeding involving a defendant accused of possessing a firearm while on supervised release — Judge Nathan released a previously detained defendant after finding that "the strength of the primary evidence relied upon by the Government to demonstrate the danger the Defendant poses to the community has been undermined by new information not available to either party at the time of [the prior detention] hearing." *Id.* at *1. Specifically, while the Government had previously argued that the defendant had possessed a loaded firearm in proximity to drugs, new facts showed that the arresting officer had "identified a different individual as holding the bag that contained the firearm." *Id.* There are no comparable changed circumstances in the instant case that suggest that the defendants are less of a flight risk or danger to the community.

As for the risks to the defendant from the COVID-19 pandemic, Judge Nathan specifically declined to rule on whether the health risks from the pandemic presented a "compelling reason necessitating [the defendant's] release." *Id.* at *3 n.3. Rather, the Court found release appropriate under Section 3142(i) because the defendant had proffered specific, unrebutted facts demonstrating that the precautions taken by the BOP were impeding his ability to prepare for a hearing scheduled for March 25, 2020.[3] *Id.* at *3. Here, by contrast, for all the reasons set forth above, the defendants have not overcome the statutory presumption of dangerousness and risk of flight, and the Government has met its burden of demonstrating the defendants' dangerousness

---

[3] Moreover, it does not appear that Section 3142(i), which is part of the bail statute addressing "release or detention of a defendant *pending trial*" (emphasis added), applies to the defendants, who stand convicted and are presently *pending sentence*. *See United States* v. *Bolze*, 2010 WL 199978, at *2 (E.D. Tenn. Jan. 13, 2010) ("[T]he Court questions the applicability of [Section 3142(i)] . . . because the Defendant is no longer in 'pretrial' detention, rather he is detained post plea, pending sentencing. Section 3143(a), which governs release or detention pending sentencing, contains no language providing for temporary release.") (citing 18 U.S.C. § 3143(a)).

and risk of flight. Moreover, unlike the defendant in *Stephens* — who demonstrated that he was unable to prepare for a "merits hearing" scheduled just one week in the future — the defendants have already been convicted and have no upcoming evidentiary hearing or trial for which to prepare; the defendants' various post-trial and sentencing motions are fully briefed, and the Court has not scheduled new sentencing dates.[4]

In *United States* v. *Jose Perez*, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020), Judge Engelmayer granted a defendant's motion for *pretrial* release because the defendant suffered from "serious progressive lung disease." The Court made clear that "this Order should not be construed as a determination by this Court that pretrial detention is unsafe or otherwise inappropriate as a general matter or in any other specific case." *Id.*

Here of course, the defendants have been detained post-conviction and pre-sentencing — and are thus subject to 18 U.S.C. § 3143; Omar has not shown that his specific health conditions militate in favor of his release; Irfan has not pointed to any health conditions that support his motion; and both defendants face substantial prison sentences.

3. <u>Irfan's Detention Does Not Violate the Eighth Amendment</u>

Irfan argues that his post-conviction and pre-sentencing detention violates the Eighth Amendment. (Dkt. 1068, at 3-4). In making the argument, Irfan ignores the controlling precedent which requires a showing of "deliberate indifference" by prison officials in order to show an Eighth Amendment violation related to conditions of confinement. *Helling* v. *McKinney*, 509 U.S. 25, 30 (1993). *Helling* and other cases cited by Irfan make clear that the Eighth Amendment is only violated where prison officials have taken some action that exposes the detainee to increased risk of harm and were deliberately indifferent to the consequences of their actions. *See, e.g., id.* at 35 (prison officials permitted detainee to be housed in close proximity to cigarette smoking); *Allen* v. *Kramer*, 2016 WL 4613360, at *10 (E.D. Cal. Aug. 17, 2016) (prison officials approved construction of prison facility in an area "known to be hyper-endemic for Valley Fever"). Irfan's motion, however, is devoid of any suggestion that his conditions of confinement have been made more dangerous by the deliberately indifferent actions of the BOP. To the contrary, the BOP has been actively preparing for the present COVID-19 outbreak for months. Moreover, the defendant's detention is no different from the thousands of other inmates in federal custody, and Irfan sets forth no additional measure short of his release that would ameliorate his Eighth Amendment concerns. Were Irfan's argument credited, then every prisoner in BOP custody would have to be released under the Constitution. That cannot be the case.

4. <u>The Attorney General's March 26, 2020 Memorandum<br>Does Not Support the Defendants' Release</u>

The defendants also argue that the Attorney General's March 26, 2020 memorandum to BOP (the "AG Memo") supports sentencing release. (Dkt. 1071, 1072). The AG

---

[4] Notably, Judge Caproni recently rejected a similar argument. *See Bonafe*, 2020 WL 1467146, at *1 ("The Court further finds that the impact of COVID-19 on Mr. Bonafe's ability to review discovery materials in the law library does not compel his release.").

Memo applies to defendants who have been sentenced, and the applicable statutory framework is 18 U.S.C. § 3582(c), which permits the BOP or a defendant, in certain circumstances, to make a motion to the Court to modify a previously imposed sentence. *See COVID-19 — Department of Justice Priorities*, available at https://www.justice.gov/ag/page/file/1258676/download. Here, as noted, the applicable statutory framework is 18 U.S.C. § 3143. In any event, the "non-exhaustive list of discretionary factors" set forth in the AG Memo do not support the defendants' claims:

*Age and vulnerability of the inmate to COVID-19, in accordance with CDC guidelines.* Citing his March 26, 2020 letter (Dkt. 1068), Irfan argues that because he is "diabetic and has been treated for a heart condition while in custody of the BOP," he has satisfied this factor. (Dkt. 1071, at 2). Irfan's prior submissions make no mention of any purported medical conditions, nor has Irfan provided any support for these new claims. The Government notes that BOP has not designated Irfan to be a higher-risk inmate. As noted above, the Government does not believe that Omar's health conditions satisfy this factor.

*The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities.* Because the defendants have yet to be sentenced, BOP has not yet designated them to a facility.

*The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment.* The Government is not presently aware, one way or another, of issues with Irfan's conduct while in custody. The Government notes that Omar has engaged in obstruction of justice while in BOP custody.

*The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment.* The Government's understanding is that because the defendants have not been sentenced, they do not have scores under PATTERN, the Prisoner Assessment Tool Targeting Estimated Risk and Need.

*Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility.* Irfan argues that because he has proposed a bail package and because he intends to live with his parents, he has satisfied this condition. As noted above, the Government submits that both defendants have failed to rebut the presumption that they present a risk of flight and danger to the community.

*The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community.* While the Government acknowledges that the defendants have been convicted of non-violent crimes, the Government again notes that the Court has found that the defendants pose a risk of flight. They have also each demonstrated that they are dangers to the community by engaging in obstructive conduct.

Accordingly, even if the AG Memo were applicable to the defendants, consideration of the factors does not support their post-conviction and pre-sentencing release.

C. <u>Conclusion</u>

Accordingly, the Court should deny Omar's and Irfan's motions for post-conviction and pre-sentencing bail, under 18 U.S.C § 3143(a)(1).

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     _____/s/_____
Joshua A. Naftalis
Andrea M. Griswold
Daniel M. Tracer
Assistant United States Attorneys
(212) 637-2310/1205/2329

cc: Defense Counsel (via ECF)